THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM K. MINTON, Defendant-Appellant.

Fifth District   No. 5—89—0295

Opinion filed May 16, 1991.

Robert Agostinelli and Mark D. Fisher, both of State Appellate Defender's Office, of Ottawa, for appellant.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, and Samuel J. Cahnman, of counsel), for the People.

JUSTICE LEWIS delivered the opinion of the court:

The defendant, William K. Minton, appeals from the judgment of the trial court denying his petition for post-conviction relief. He presents two issues for review: (1) whether the trial court erred in denying defendant's petition for post-conviction relief where his uncontradicted testimony showed that his guilty plea was not knowing and intelligent because he had been led to believe by trial counsel that his sentence in Illinois would run concurrently with any sentence subsequently imposed in Missouri, and (2) whether the trial court erred in denying defendant's petition for post-conviction relief "where the State breached [his] plea agreement by bringing him back to Illinois, after he had been convicted in Missouri, to serve his Illinois sentence

before serving his Missouri sentences, thus preventing [him] from filing for relief under Section 1005—8—1(f) [*sic*] of the Unified Code of Corrections and precluding his Illinois sentence from being served concurrently with his Missouri sentences."

By indictment in two counts filed October 18, 1985, the defendant was charged with the offenses of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)) and aggravated kidnapping (Ill. Rev. Stat. 1985, ch. 38, par. 10—2(a)(5)). At his arraignment on October 25, 1985, he entered a plea of not guilty.

Thereafter, at a hearing on February 21, 1986, the defendant entered a plea of guilty with respect to the charge of armed robbery. Upon the State's motion the court dismissed the count charging the offense of aggravated kidnapping. When the hearing began, the State described the status of the case as follows:

> "I have discussed the case at length with Mr. Rodcliffe [defense counsel] and we have reached, I believe, an agreement, a plea agreement, and that agreement is in return for the defendant's plea of guilty to the Armed Robbery count, the State would agree to dismiss the Aggravated Kidnapping count. We would then, both sides would be free to argue for what sentence we think is appropriate on the Armed Robbery charge."

Asked by the trial court whether that was a correct statement of the plea negotiations, defense counsel responded:

> "Basically, Your Honor. There's a couple of matters which need to be addressed by the Court. With regard to the plea agreement, it's my understanding that the State would join me or not object to me requesting this Court to recommend that any sentence entered in this case be recommended that it be concurrent with any sentences received in the State of Missouri for pending charges out of the same transaction, and also that this Court would recommend that the Missouri sentence and this sentence running concurrently be served in the penitentiary in the State of Missouri."

The State agreed that defense counsel's statement was correct. Thereafter the trial court asked the defendant, "Did you hear what your attorney and the Assistant State's Attorney just said about their agreement of theirs?" The defendant responded, "Yes, I did, sir." Asked by the trial court, "Is that what you understand the agreement to be?" defendant answered, "Yes, sir." Later the court addressed the following question to defendant:

> "Other than the reduction or the dismissal of one count and the promise by the State to request concurrent sentencing with the

Missouri charge, has anybody promised you anything to get you to plead guilty to this?"

The defendant answered, "No, sir, they have not." The trial court accepted the defendant's plea.

At the sentencing hearing, conducted on April 3, 1986, the trial court stated:

"I will have several extremely strong recommendations for the Department of Corrections, and I know that they are wanton [sic] to disregard recommendations of the Courts, but nevertheless I ask them to seriously consider my recommendations. The first of which is that this time run concurrent with any time that he receives in Missouri, and that he be allowed to serve whatever time he receives in Missouri, in Missouri, given credit to the time in Illinois. Secondly, that while he is incarcerated in any facility of the Illinois Department of [C]orrections that he receive any and all therapeutic assistance that is available to him."

At this hearing the trial court observed that the defendant had given "the impression of being an alert, above average, intelligent individual," a person who "does seemingly show above average intelligence." The court sentenced the defendant on April 3, 1986, "to serve 25 years in the Department of Corrections" and "would recommend that this time run concurrently with any time defendant received in Missouri and that he be allowed to serve said time in the State of Missouri." The judgment and sentence state that the term of imprisonment is fixed at "Twenty-five (25) years-credit for time served, sent. to run concurrent with Missouri sent. and to be served in Missouri."

On April 18, 1986, the defendant moved unsuccessfully to withdraw his guilty plea. In an appeal (No. 5—86—0382) that followed, in which the defendant contended that the sentence was an abuse of discretion, we affirmed the judgment of the trial court by our order filed September 25, 1987. *People v. Minton* (1987), 160 Ill. App. 3d 1165, 526 N.E.2d 957 (unpublished Rule 23 order).

During the pendency of that appeal, the trial court entered an order on August 3, 1987, finding that

"[o]n the 30th day of July, 1987, the defendant was convicted of First Degree Assault and two counts of Armed Criminal Action in the Circuit Court of Jefferson County, Missouri[,] and sentenced to three life terms in the Missouri Department of Corrections, said sentences to run consecutive to one another and to any other sentence previously imposed."

The trial court accordingly ordered that the defendant be returned to Illinois in the custody of the Illinois Department of Corrections and then serve the sentence imposed by the trial court on April 3, 1986.

On July 5, 1988, the defendant filed *pro se* a petition for post-conviction relief, subsequently amended by court-appointed counsel. In the amended petition defendant requested that the judgment of the trial court be vacated or that the sentence be reduced, stating, *inter alia*, that the plea of guilty was involuntary because he "was not properly admonished by the trial court of his rights upon entering the Plea of Guilty, and, furthermore, the Plea was made under ignorance, misapprehension and misunderstanding by the Petitioner of the law, facts, the Plea and its consequences and of the legality of the sentence actually imposed." The defendant stated further in the amended petition that he was denied effective assistance of trial counsel, who "[f]ailed to advise [defendant] that the State of Missouri did not have to follow the sentence imposed in Illinois" and "[f]ailed to object to the bad faith negotiations conducted by the prosecution."

At the hearing on the amended petition conducted on March 28, 1989, the defendant was the only witness. Asked, "What more do you feel that [defense counsel at the time of defendant's plea of guilty was entered] should have done with regard to this matter?" Defendant responded:

"I feel that I should have been made aware of the fact that this was a recommendation as such; that even though Illinois court says they want to run their sentence concurrently but Missouri court can say no, they don't want to do that because if I would have known that factor involved, I would never have pleaded to it because I was opening myself to a can of worms. I wasn't going to plead to that. The reason I took the open plea in the first place was the fact that we were going to get the concurrent sentencing. That was the total basis for the plea in the first place because even if we took it to trial, I don't think we would have received more than 30 years."

When asked whether he felt that the State's Attorney had acted in bad faith in the matter, he answered:

"It was never pointed out on the record that this would ever possibly happen so the only thing I can claim from something like that was the fact that we all went through the motions that—okay, there is going to be concurrent sentences but there was no real substance because the recommendation was nothing. We made a big deal of the recommendation but obviously it was meaningless and I was led to believe that it was going to

be. I was going to have concurrent sentencing and I didn't receive it and I am not a lawyer. I was a layman at the time, especially at that time. I had no working knowledge of the law and the wording and stuff, it seems quite clear here when he recommended the order, that a recommendation is a recommendation. It is quite clear because you see what happens in the aftersight but in the foresight, I had no indication at all this would ever happen. That my belief at the time when I made that plea was that I was getting concurrent sentencing and was not informed of anything different than that."

On cross-examination the following colloquy between the assistant State's Attorney and defendant occurred:

"Q. Who then told you—who promised to you that it would be concurrent? Outside of the plea, you are saying things happened outside of the plea. Who was it that told you or promised you that that would happen?

A. My attorney. Well, [he] presented it in that manner. He didn't say I promise you you will get this, he stated this is what will happen and then we went through the language in the plea. You know, he said don't worry, don't worry about it. This is what is going on. We will take care of it. They took care of it all right.

Q. You indicated earlier that your attorney said you probably would receive. Was that your language earlier, probably?

A. He didn't say probably. He said this is what we will do. He said we will take the open plea. The Judge has agreed to take the offer for the concurrent sentencing. Obviously, it was all back-room dealing. This is what we are going to offer and everyone pretty much said they will accept that. The only thing that wasn't indicated in the plea was the fact how many years I was going to get. We were going to go open on that because the State and my attorney could not agree on a figure. My bargaining chip was concurrent sentencing and the recommendation to serve it in Missouri.

Q. And did you not get that recommendation from the Illinois court?

A. To serve the sentence in Missouri but what we got was a recommendation for concurrent sentencing and what I was led to believe was we were going to get concurrent sentencing. There is a difference.

Q. But you understand what recommend means?

A. Oh, I understand now what it means, yes. Quite clear to me. You have to understand the language the Court uses and what they write their papers up and the way they do business and what really happens is sometimes different. I was just naive to the whole system. I was just told this. I was informed by my expert, which was [defense counsel], what was going on and I was relying on him heavily to keep me informed of the consequences because I had no knowledge. I was ignorant. I was just as ignorant as somebody who had no education at all with the law."

In denying post-conviction relief the trial court stated that the defendant "received what he bargained for at the time and that is a recommendation by the trial Judge or the sentencing Judge that the sentence that he received here in Illinois be run concurrent with his sentence in Missouri." The trial court observed further that "[t]he transcript is just replete with references to the fact that what the defendant was bargaining for was a recommendation by the sentencing Judge and the defendant received that."

With respect to the first issue defendant raises, he asserts that he was misled as to the legal effect of the trial court's recommendation with the result that he believed his sentences in Illinois and Missouri would be concurrent and, therefore, he entered a plea of guilty. He argues that "[i]t is apparent that defendant's trial attorney was ineffective for failing to properly advise defendant that the trial judge's recommendation was not binding on the Missouri court and that the possibility existed that the Missouri court would ignore [the trial court's] recommendation."

▪ Allowing the withdrawal of a guilty plea is, under Supreme Court Rule 604(d) (134 Ill. 2d R. 604(d)), a matter for the trial court's discretion. (*People v. Hale* (1980), 82 Ill. 2d 172, 411 N.E.2d 867.) The decision of the trial court will not be disturbed unless it appears that the guilty plea was entered through a misapprehension of the facts or the law, that defendant has a defense worthy of consideration, or where there is doubt of guilt of the accused and the ends of justice would better be served by submitting the case to a trial. (*People v. Pirt* (1987), 164 Ill. App. 3d 379, 517 N.E.2d 1172.) The withdrawal of a guilty plea should be allowed in circumstances where the plea resulted from the misapprehension of law or fact or in cases when it appears the plea was entered as a result of a misrepresentation by counsel, the State's Attorney, or someone else in authority. (*People v. Smithey* (1983), 120 Ill. App. 3d 26, 458 N.E.2d 87.) A defendant's mistaken subjective impressions gained from conferences with his le-

gal counsel, in the absence of substantial objective proof showing that they were reasonably justified, do not provide sufficient grounds upon which to set aside his plea of guilty. (*Hale*, 82 Ill. 2d 172, 411 N.E.2d 867; *Smithey*, 120 Ill. App. 3d 26, 458 N.E.2d 87.) The defendant as petitioner bears the burden of showing that the circumstances as they existed at the time of the plea, judged by objective standards, reasonably justified his mistaken impression. *Hale*, 82 Ill. 2d 172, 411 N.E.2d 867.

■ The defendant here has failed to meet his burden of proof. The only evidence of the defendant's having been misled as to the legal effect of the trial court's recommendation that the sentences imposed in Illinois and Missouri be served concurrently was his own testimony to that effect. He offered no corroboration of his testimony. However, as the trial court indicated, the record shows that the defendant testified upon entering the plea of guilty that the agreement outlined by his own counsel and the State was what he understood the agreement to be. At that time he expressly testified, in response to questioning by the trial court, that beyond the dismissal of the count charging aggravated kidnapping and the promise by the State to request a sentence concurrent with any imposed by Missouri, no one had promised him anything to induce his plea of guilty. The trial court noted at sentencing that the defendant appeared to be possessed of intelligence above the average. At the hearing on the petition for post-conviction relief, defendant testified that he understands the English language and had graduated from high school at the time he entered the plea of guilty. The instant defendant failed to show that the circumstances as they existed at the time of the plea, when judged by objective standards, reasonably justified his mistaken impression. Having failed to present substantial objective proof that his mistaken subjective impressions gained from conferences with his attorney were reasonably justified, defendant did not provide sufficient grounds upon which to set aside his plea of guilty. Nor did the defendant allege the existence of a valid defense or any other factors that would, in the ends of justice, require a finding of error. (See *Hale*, 82 Ill. 2d 172, 411 N.E.2d 867.) Thus, it was not an abuse of the trial court's discretion to deny the defendant post-conviction relief.

■ Concerning the other issue defendant raises for review, he states that had he served the sentence imposed in Missouri prior to that imposed in Illinois, he could have filed a petition pursuant to section 5—8—1(f) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(f)) asking the trial court in Illinois to give him credit against his Illinois sentence for the time served in prison in Missouri. "But the conduct of

the State's Attorney's Office," he argues, "in petitioning for defendant's return to Illinois to first serve his Illinois sentence, undermined defendant's Section 1005—8—1(f) [*sic*] option and insured that defendant's Illinois sentence could not be served concurrently with his Missouri sentences." Defendant concluded that "[t]he State's Attorney thus violated defendant's plea agreement" and that, as a consequence, the trial court erred by denying defendant's post-conviction petition. However, the record shows that the State agreed, under the plea agreement, to move to dismiss the count charging aggravated kidnapping and would join in or not object to defense counsel's request that the trial court recommend that any sentence entered be served concurrently with any sentence received in Missouri for pending charges arising out of the same transaction and that the concurrent sentences be served in the penitentiary in Missouri. The record shows that the State complied with these terms. Hence, the argument that the State "violated defendant's plea agreement" is without merit. Thus, the trial court may not be said to have erred on this basis.

Affirmed.

HOWERTON and CHAPMAN, JJ., concur.